**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

AFRICAN COMMUNITIES
TOGETHER, et al.,

    *Plaintiffs-Appellees,*

    *v.*

MARKWAYNE MULLIN, Secretary
of the Department of Homeland
Security, et al.,

    *Defendants-Appellants,*

No. 26-1254

**APPELLEES' RESPONSE TO APPELLANTS' MOTION FOR A STAY
AND SUMMARY REVERSAL**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT ....................................................................................................5

   I.   This Court Should Grant Reversal and Remand this Case to Clear a Path for the District Court to Consider Plaintiffs' Existing Equal Protection Claim and New Claims....................................................................................5

   II.  This Court Should Direct the Mandate to Issue 21 Days After Its Reversal Order .......................................................................................7

   III.  This Court Should Deny the Government's Request for a Stay Pending Appeal ....................................................................................13

CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Holmes Cnty. Bd. of Educ.*,
396 U.S. 19 (1969)..................................................................................12

*Aung Doe v. Mullin*,
No. 26-1294 (7th Cir. July 16, 2026), Dkt. 34 ...............................8, 13

*Bell v. Thompson*,
545 U.S. 794 (2005)...................................................................................7

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*,
996 F.3d 37 (1st Cir. 2021).....................................................................15

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*,
710 F.2d 940 (2d Cir. 1983) .....................................................................6

*Callais v. Louisiana*,
No. 25A1197 (U.S. May 4, 2026) ...........................................................12

*Dahlia Doe v. Mullin*,
No. 25-2995 (2d Cir. June 25, 2026).........................................3, 12, 13

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ................................................................15

*Doe v. Noem*,
784 F. Supp. 3d 437 (D. Mass. 2025)......................................................10

*Doe v. Noem*,
817 F. Supp. 3d 27 (D. Mass. 2026)........................................................16

*Does 1-3 v. Mills*,
39 F.4th 20 (1st Cir. 2022)......................................................................15

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ................................................................11

*Gonzalez v. Justices of Mun. Ct. of Bos.*,
420 F.3d 5 (1st Cir. 2005)..........................................................................6

*Hernandez-Lara v. Lyons*,
   10 F.4th 19 (1st Cir. 2021)..................................................................16

*KalshiEX LLC v. CFTC*,
   119 F.4th 58 (D.C. Cir. 2024).............................................................15

*Miot v. Trump*,
   No. 26-5050 (D.C. Cir. July 2, 2026) ..................................................13

*Mullin v. Doe*,
   No. 25-1083, 609 U.S. —, 2026 WL 1825840 (U.S. June 25, 2026) ........*passim*

*Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*,
   No. 25-CV-293-LM, 2025 WL 2807652 (D.N.H. Oct. 2, 2025) ......................10

*New York v. Trump*,
   133 F.4th 51 (1st Cir. 2025)...............................................................16

*Nken v. Holder*,
   556 U.S. 418 (2009)................................................................11, 14, 15

*Pratt v. Philbrook*,
   109 F.3d 18 (1st Cir. 1997)...................................................................6

*Ryan v. Schad*,
   570 U.S. 521 (2013)..............................................................................7

*Scripps–Howard Radio, Inc. v. FCC*,
   316 U.S. 4 (1942)................................................................................14

*Velasco Lopez v. Decker*,
   978 F.3d 842 (2d Cir. 2020) ................................................................16

*W. M. C. A., Inc. v. Simon*,
   370 U.S. 190 (1962)..............................................................................6

**Statutes**

8 C.F.R. § 248.1(b) ....................................................................................2

8 U.S.C. § 1254a(b)(5)(A) .........................................................................8

8 U.S.C. § 1255(c)(2)...............................................................................10

**Rules**

Federal Rule of Appellate Procedure 40 ..........................................................3, 7, 13

Federal Rule of Appellate Procedure 41 ..........................................................3, 7, 13

Supreme Court Rule 44.1 ...............................................................................4

**Other Authorities**

Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. TIMES, July 1, 2026 .............................................................9

## INTRODUCTION

Plaintiffs-Appellees ("Plaintiffs") do not contest that summary reversal of the postponement order and remand are warranted in light of *Mullin v. Doe*, No. 25-1083, 609 U.S. —, 2026 WL 1825840 (U.S. June 25, 2026). But contrary to the Government's suggestion, there is no emergency here which justifies issuing an immediate stay. On the other hand, the immediate termination of Temporary Protected Status ("TPS") for South Sudan would cause irreparable harm to Plaintiffs. This Court should reverse the district court's postponement order, remand the case, and issue its standard 21-day mandate to facilitate an orderly process and allow the district court the opportunity to consider Plaintiffs' new grounds for preliminary relief based on new claims included in their proposed amended complaint. *See* D. Ct. Dkt. 94.1. Further, because the Parties agree that a reversal is appropriate, this Court should deny the Government's motion for a stay pending appeal as effectively moot, since no appeal will be pending upon the Court's reversal order. The Government's stay request also fails because the equitable factors overwhelmingly favor Plaintiffs.

Granting the Government's motion for an immediate stay pending appeal or granting summary reversal with an expedited mandate would impose irreparable harm by effectuating the termination of TPS for over 300 South Sudanese people, many of whom have lived in the United States for more than a decade and have U.S.

1

citizen and legal permanent resident family members. Individuals would abruptly lose jobs, health insurance, drivers' licenses, and educational and career opportunities, and many would face detention and deportation to a country that is "dangerous and unstable," "in a state of crisis," and suffering from "armed violence, food scarcity, [and] widespread disease." D. Ct. Dkt. 65 at 38–39. Even a brief interruption in TPS status would render many TPS holders ineligible for long-term relief conditioned on continuous lawful presence. *See, e.g.*, 8 C.F.R. § 248.1(b) (noting that change of nonimmigrant status "may not be approved for an alien who failed to maintain" lawful status).

Plaintiffs do not dispute that *Mullin* undermines the legal rationale that supports the district court's existing postponement order. But Plaintiffs submit that they remain eligible for preliminary relief based on both (1) an equal protection constitutional claim that the district court did not rule on and (2) new claims that Plaintiffs have presented to the district court in a proposed amended complaint filed on July 13, 2026. *See* D. Ct. Dkt. 94.1 at 74–79. The same day Plaintiffs filed their proposed amended complaint, they also filed a renewed motion for postponement based on the newly asserted claims, D. Ct. Dkt. 96, which the district court denied without prejudice because it determined that it lacked jurisdiction over the motion while this case is on appeal, D. Ct. Dkt. 99. Plaintiffs are prepared to file a renewed postponement motion immediately upon remand. Reversing the existing

2

postponement order and remanding this case to the district court with the standard 21-day mandate will promote judicial economy by allowing the district court time to evaluate the existing and proposed new claims in light of *Mullin* to determine whether preliminary relief is warranted in the first instance. *See* Fed. R. App. P. 40(d)(1), 41(b) (specifying that ordinarily the mandate issues 21 days after the court's opinion); *see also Dahlia Doe v. Mullin*, No. 25-2995, Dkt. 54.1 (2d Cir. June 25, 2026) (Supreme Court letter stating that the standard mandate applies; "[t]he judgment or mandate of this Court will not issue for at least thirty-two days pursuant to [Supreme Court] Rule 45"). Following that course—and denying the Government's request for a stay—will also prevent catastrophic irreparable harm to Plaintiffs.

## BACKGROUND

Plaintiffs filed this lawsuit in December 2025 to prevent the termination of TPS for approximately 232 South Sudanese TPS beneficiaries and 73 South Sudanese nationals with pending TPS applications, all of whom call the United States their home. The district court granted Plaintiffs' request for relief on February 12, 2026, and postponed the termination of South Sudan's TPS designation. D. Ct. Dkt. 65. The Government appealed the postponement order to this Court and sought a stay pending appeal from the district court, which denied that request on April 9, 2026. D. Ct. Dkts. 68, 69, 81.

3

On April 23, 2026, the district court granted the Parties' joint motion to hold proceedings in abeyance at the district court until the Supreme Court issues rulings in *Mullin v. Dahlia Doe* and *Trump v. Miot*. D. Ct. Dkt. 85 at 1. On May 8, 2026, this Court granted the Parties' comparable joint motion to hold proceedings in this Court in abeyance "pending the Supreme Court's issuance of a decision(s) in the 'TPS cases.'" Order, No. 26-1254 (1st Cir. May 8, 2026).

On June 29, 2026, the Government filed a motion to lift abeyance, for an indicative ruling, and a stay pending appeal in the district court. On July 13, 2026, Plaintiffs filed a motion for leave to amend, an amended complaint raising new claims, and a renewed postponement motion. D. Ct. Dkts. 94, 94.1, 96. The following day, the district court denied the Government's motion for an indicative ruling and concluded that it does not have jurisdiction to address Plaintiffs' postponement motion based on their new claims given this pending appeal. D. Ct. Dkts. 98, 99.

The Supreme Court issued its decision in *Mullin v. Doe* on June 25, 2026. No. 25-1083, 609 U.S. —, 2026 WL 1825840 (U.S. June 25, 2026). The time for rehearing expired July 20, 2026. *See* Sup. Ct. R. 44.1. Despite the Parties' agreement, on July 15, 2026, the Government filed a motion requesting to lift the abeyance, a stay pending appeal, an immediate administrative stay, and summary reversal. *See* Mot. to Lift Abeyance, Issue Stay Pending Appeal, Issue Immediate

4

Administrative Stay, and Summarily Reverse, No. 26-1254 (1st Cir. July 15, 2026) ("Mot."). The following day, this Court denied the Government's motion for an administrative stay, lifted the abeyance, and ordered briefing on the Government's motion. *See* Order, No. 26-1254 (1st Cir. July 16, 2026).

## ARGUMENT

**I.** **This Court Should Grant Reversal and Remand this Case to Clear a Path for the District Court to Consider Plaintiffs' Existing Equal Protection Claim and New Claims**

Plaintiffs do not dispute that the reasons for the district court's postponement order do not survive *Mullin*. *See Mullin*, 2026 WL 1825840, at *7. Although the district court concluded that the TPS statute does not bar review of APA claims challenging the procedures by which a TPS termination is made, *Mullin* held the opposite. *See* D. Ct. Dkt. 65. The reasoning underlying the current postponement order is therefore no longer valid, and the district court's order should be reversed. That reversal, however, would not reach or foreclose (1) Plaintiffs' existing equal protection claim, which the district court declined to address in its order, D. Ct. Dkt. 65 at 37; (2) Plaintiffs' proposed amended complaint, which raises new claims challenging whether the Department of Homeland Security Secretary has authority to terminate under the TPS statute, as opposed to the Attorney General, and a procedural due process claim; or (3) new arguments arising from Plaintiffs' new claims in support of Plaintiffs' existing claims. Nor would a reversal disturb the

5

district court's conclusion that the non-merits factors weighed in favor of interim relief.0F[1]

Remand of the case to the district court will ensure consideration of Plaintiffs' equal protection claim, as well as Plaintiffs' new claims. The district court is the appropriate court to evaluate the new claims in the first instance, and any appeal can be considered after the district court reviews the law and facts together. *See W. M. C. A., Inc. v. Simon*, 370 U.S. 190, 191 (1962) ("[T]he court below should be the first to consider the merits of the federal constitutional claim . . . ."). To avoid unnecessary uncertainty during the period before issuance of the mandate, the Court should clarify that its disposition does not preclude the district court from considering whether interim relief, such as an administrative stay, is warranted based on claims, evidence, and arguments not previously before this Court. *Cf. Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 947 (2d Cir. 1983) (explaining that, although the court of appeals retained control over its judgment until issuance of the mandate, the district court remained free to consider injunctive relief based on matters not previously before the appellate court).

---

[1] As an alternative to reversal, Plaintiffs note that this Court also has authority to vacate and remand for further proceedings at the district court in light of *Mullin*. *See, e.g.*, *Pratt v. Philbrook*, 109 F.3d 18, 21–22 (1st Cir. 1997) (vacating and remanding for reconsideration in light of intervening Supreme Court precedent); *Gonzalez v. Justices of Mun. Ct. of Bos.*, 420 F.3d 5, 8 (1st Cir. 2005) (recognizing that remand is the appropriate course where intervening precedent materially alters the governing legal framework).

## II. This Court Should Direct the Mandate to Issue 21 Days After Its Reversal Order

Assuming this Court reverses and remands, it should allow the mandate to issue in the ordinary course under Rule 41, *i.e.*, 21 days after its reversal order.

Federal Rule of Appellate Procedure 41 establishes the default timetable for issuance of the mandate while also expressly providing that the Court "may shorten or extend the time by order." Fed. R. App. P. 41(b). That determination rests within the Court's sound discretion and is distinct from the standards governing stays pending appeal or other forms of interim equitable relief. *See Bell v. Thompson*, 545 U.S. 794, 804–08 (2005); *Ryan v. Schad*, 570 U.S. 521, 524–26 (2013) (per curiam).

Here, this Court should adhere to the ordinary Rule 41 schedule. That approach is appropriate here in order to facilitate an orderly process for the consideration of Plaintiffs' new claims and to prevent irreparable harm to Plaintiffs. And there is no need to expedite the issuance of the mandate when the Supreme Court itself took no comparable action in *Mullin*.

1. An orderly remand to the district court will permit consideration of Plaintiffs' new claims, and their existing equal protection claim, on a timeline that will prevent irreparable harm to Plaintiffs without any meaningful prejudice to the Government. *See* Fed. R. App. P. 40(d)(1), 41(b); D. Ct. Dkt. 94.1 at 74–79 (presenting new constitutional and statutory claims). Indeed, recently, the Seventh Circuit, in an appeal involving the TPS termination of Burma, similarly granted

7

summary reversal, remanded "for further proceedings in light of and consistent with *Mullin*," and did not immediately issue the mandate. Order at 2, *Aung Doe v. Mullin*, No. 26-1294 (7th Cir. July 16, 2026), Dkt. 34.

Plaintiffs' first postponement motion was based in part on an equal protection violation, which the district court declined to address after finding postponement warranted on statutory grounds. D. Ct. Dkt. 65 at 37. Additionally, because the district court denied without prejudice for lack of jurisdiction Plaintiffs' renewed motion to postpone based on their new claims, Plaintiffs intend to seek emergency relief by refiling the motion immediately upon remand. As with the undisturbed constitutional claim, the district court should evaluate these new claims in light of *Mullin* in the first instance and should be given the time to do so upon remand.

Indeed, some of Plaintiffs' new arguments have direct implications even for Plaintiffs' original claims that will require the district court to consider *Mullin*'s scope. For example, Plaintiffs plan to argue that the authority to terminate TPS status is vested exclusively in the Attorney General, not the DHS Secretary, and that the TPS statute's review bar applies by its plain terms only to determinations "of the *Attorney General*," 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Accordingly, the review bar is inapplicable to the actions of the Secretary. *See* D. Ct. Dkt. 94.1 at 74–79. Plaintiffs' proposed amended complaint also alleges additional constitutional violations. *Id.* These new claims are complex and issuance of the mandate 21 days

after this Court's reversal order will allow the district court time to consider how the litigation should proceed.

2. Issuing a mandate on the typical timeline is also necessary to prevent irreparable harm to Plaintiffs. Indeed, the Government does not dispute that Plaintiffs will suffer irreparable harm. *See generally* Mot. As the district court previously recognized, TPS is the sole immigration status for the four named Plaintiffs. D. Ct. Dkt. 65 at 39. They, like other TPS holders, would be immediately subject to arrest and detention pending deportation if the termination goes into effect. In light of the administration's recent push for mass immigration arrests—which has roughly doubled the rate of arrests to 2,000 a day—the risk of arrest and detention facing South Sudanese TPS holders is imminent and concrete. *See* Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. TIMES, July 1, 2026, https://perma.cc/ZQJ4-5FEJ (describing major surge of arrests by federal immigration officials, including during traffic stops and on the streets). Plaintiffs would be forced "to choose between two injurious options: continue following the law and leave the country . . . or await removal proceedings." *Doe v. Noem*, 784 F. Supp. 3d 437, 465 (D. Mass. 2025). In either case, Plaintiffs would face a return to South Sudan, which the lower court recognized is "dangerous and unstable," "in a state of crisis," and suffering from "armed violence, food scarcity, [and] widespread disease." D. Ct. Dkt. 65 at 38–39.

Furthermore, for TPS holders, including the named Plaintiffs, who have no other lawful immigration status, the loss of TPS protections—even for a few days—may have long-term negative consequences on their ability to qualify for other forms of immigration relief. D. Ct. Dkt. 65 at 40. Loss of continuous status has negative implications for many seeking lawful permanent residence. For example, an applicant who is not an immediate relative of a U.S. citizen generally may not adjust their status to permanent residence if they are "in unlawful immigration status on the date of filing" or have failed to "maintain continuously a lawful status since entry into the United States[.]" 8 U.S.C. § 1255(c)(2). Therefore, even if TPS termination temporarily disrupts Plaintiffs' lawful immigration status, Plaintiffs may lose, irreversibly, their ability to obtain lawful permanent residence.

Immediate termination would also cause Plaintiffs to lose their work authorization and jeopardize their ability to support their families. *See Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*, No. 25-CV-293-LM, 2025 WL 2807652, at *24 (D.N.H. Oct. 2, 2025) ("Loss of the ability to practice one's chosen profession is irreparable harm.") (citing *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011)). In many states, TPS holders will lose their drivers' licenses—losing both their mobility and their only state-issued identification.

All of these injuries are severe and irreparable and weigh heavily in favor of this Court issuing a mandate on the typical timeline in order for the district court to

10

consider whether preliminary relief is warranted based on Plaintiffs' proposed amended complaint.

The Government, in contrast, has documented no actual harm in the several months that South Sudanese TPS holders have continued to live and work in safety in the United States during the pendency of this appeal. *See generally* Mot. The Government argues that the postponement order restrains it from enforcing a statute, and that restraint is itself irreparable harm. Mot. at 8. But "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Although Plaintiffs' remaining constitutional claim and new claims have been presented to the district court, it is entirely possible that should this Court not issue a 21-day mandate, Plaintiffs would be detained and removed to a dangerous and unstable country before the district court rules on the claims before it. This, too, weighs in favor of permitting the standard mandate issuance for the district court to evaluate Plaintiffs' alternative grounds for relief.

3. The Supreme Court's approach in *Mullin* is yet another reason not to expedite the issuance of this Court's mandate. The Supreme Court has not yet issued its mandate in *Mullin*; the mandate in that case will not issue until at least July 27, more than 32 days after the Supreme Court's ruling in accordance with typical protocols. *See* Ltr. from Clerk, U.S. Supreme Ct., *Dahlia Doe v. Mullin*, No. 25-

11

2995 (2d Cir. June 25, 2026), Dkt. 54.1 (stating that its standard mandate applies; "[t]he judgment or mandate of this Court will not issue for at least thirty-two days pursuant to Rule 45."). Had the Supreme Court determined there was a necessity for its judgment ending protections for Haitian and Syrian TPS holders to take immediate effect, it could have expedited issuance of the mandate, as it has done in other cases. *See* Order, *Callais v. Louisiana*, No. 25A1197 (U.S. May 4, 2026) (immediately issuing a certified copy of the judgment to the lower court); *see also Alexander v. Holmes Cnty. Bd. of Educ.*, 396 U.S. 19, 19–21 (1969) (in school de-segregation case, ordering that "the judgment shall issue forthwith and the Court of Appeals is requested to give priority to the execution of this judgment as far as possible and necessary"). Additionally, to date, no court has read *Mullin* to require immediate reversal or vacatur of an existing postponement order. Order, *Aung Doe v. Mullin*, No. 26-1294 (7th Cir. July 16, 2026); *see also* Order, *Dahlia Doe v. Mullin*, No. 25-2995 (2d Cir. July 10, 2026), Dkt. 60 (denying request for administrative stay); Order, *Miot v. Trump*, No. 26-5050 (D.C. Cir. July 2, 2026) (ordering briefing deadline without entering administrative stay). This Court should not be the first to do so.

4. If the Court is not inclined to issue the mandate in 21 days, then the Court should nevertheless exercise its discretion to issue the mandate at a time that would provide a reasonable opportunity for the district court to address a renewed

request for interim relief based on claims not before this Court. *See* Fed. R. App. P. 41(b) (noting that courts of appeals "may shorten or extend the time" for issuance of mandate). Indeed, although the standard mandate period for cases involving the Government is longer than 21 days, *see* Fed. R. App. P. 40(d)(1)(C), 41(b), Plaintiffs simply request the time necessary to move expeditiously on their new claims. This is particularly appropriate given the substantial and undisputed irreparable harms facing Plaintiffs, and the absence of any demonstrated urgency requiring immediate implementation of the TPS termination.

**III.   This Court Should Deny the Government's Request for a Stay Pending Appeal**

Because the Parties agree that this Court should reverse the district court's order and remand, this Court should deny the Government's motion for a stay pending appeal as effectively moot.

As the Supreme Court made clear in *Nken v. Holder*, a stay pending appeal is a "means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." 556 U.S. at 427. The justification for such a stay is that "[i]t takes time to decide a case on appeal." *Id.* at 421. "No court can make time stand still," but "if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Id.* (quoting *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9 (1942)). Here, where the Parties agree that summary reversal and remand are appropriate, a stay is unjustified because the primary justification

13

for a stay—to provide the appellate court with the "time necessary to review [the appeal]"—is unnecessary. *Id.* Given the Parties' agreement on reversal, there is no need to adjudicate the Government's motion for a stay pending appeal.

Regardless, even if the Court were to address the substance of the Government's motion, the stay should be denied. As discussed above, Plaintiffs would face immediate irreparable harm if the TPS termination were allowed to go into effect. *See supra* pp. 9–11. By contrast, the Government's own past agreement to a standard, more attenuated timeline, despite an entirely foreseeable result from the Supreme Court, contradicts its significantly more limited claims of irreparable harm.1F[2]

The third and fourth factors, which "merge when the Government is the opposing party," *Nken*, 556 U.S. at 435, also overwhelmingly favor Plaintiffs because issuing the stay would substantially injure Plaintiffs and would be contrary to the public interest. If South Sudan's TPS designation is terminated, Plaintiffs will immediately face the loss of status; loss of work authorization and related benefits; and will face risk of detention, deportation, and forced separation from family and

---

[2] Defendants' failure to demonstrate irreparable harm is alone a sufficient reason to deny their stay request. *See, e.g.*, *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024); *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020); *see also Does 1-3 v. Mills*, 39 F.4th 20, 24–25 (1st Cir. 2022) (noting that movants' irreparable harm absent a stay is one of "the most critical" factors in the calculus (quoting *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021); *Nken*, 556 U.S. at 434)).

community—all of which would be "very likely impossible to rectify through final relief that may come at an indeterminate future point." *Doe v. Noem*, 817 F. Supp. 3d 27, 57 (D. Mass. 2026); *see also Hernandez-Lara v. Lyons,* 10 F.4th 19, 33 (1st Cir. 2021) ("[N]eedless detention . . . 'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'" (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020))); D. Ct. Dkt. 65 at 38–40. The public also has an interest in the orderly administration of law, and a stay pending appeal circumvents that orderly administration. *See New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) ("[A] stay pending appeal is an intrusion into the ordinary processes of administration and judicial review." (citation modified)).

For these reasons, if this Court reaches the Government's motion for a stay pending appeal, it should deny the motion.

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand the case to the district court, and direct the issuance of the mandate 21 days after the Court's order. The Court should deny the Government's motion for a stay pending appeal, either as effectively moot or because it fails on its own terms.

Respectfully submitted,

*/s/ Daniel G. Randolph*
Daniel G. Randolph
Stephen Petkis
Paul Killebrew
Mishi Jain
Matthew C. Quallen
Kristin M. Oakley
COVINGTON & BURLING LLP
850 10th Street NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302
drandolph@cov.com

Nargis Aslami
Collin Poirot
Abbey Rutherford
MUSLIM ADVOCATES
1032 15th St NW # 362
Washington, D.C. 20005
Tel:  (202) 897-2622
nargis@muslimadvocates.org

July 21, 2026                          *Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

1. This Response complies with the type-volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure because it contains 3,753 words, excluding the parts of the Motion exempted by Fed. R. App. P. 32(f).

2. This Response complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because it was prepared using 14-point Times New Roman font in Microsoft Word for Microsoft 365 MSO Version 2605.

July 21, 2026

*/s/  Daniel G. Randolph*
Daniel G. Randolph

*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 21, 2026, I caused the foregoing document to be filed with the Clerk of the Court of the United States Court of Appeals for the First Circuit using the Court's CM/ECF system.

/s/  Daniel G. Randolph
Daniel G. Randolph

*Counsel for Appellees*